**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **ROBERT O. GONZALEZ, JR.,** | § | |
|     **Plaintiff,** | § | |
| | § | |
| **V.** | § | **Civil Action No. 5:15-cv-00798-OLG** |
| | § | |
| **MASSACHUSETTS MUTUAL LIFE** | § | |
| **INSURANCE COMPANY,** | § | |
|     **Defendant.** | § | |

---

### PLAINTIFF'S RESPONSE TO DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT AND SUPPORTING BRIEF

---

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff, Robert O. Gonzalez, Jr., pursuant to FRCP 56 and Local Rule CV-7(d)(1), files this Response to Defendant, Massachusetts Mutual Life Insurance Company's ("MassMutual") Motion for Summary Judgment and Supporting Brief (ECF No. 25).[1]

### OBJECTION TO DEFENDANT'S SUMMARY JUDGMENT EVIDENCE:

Defendant has filed a self-serving summary of its version of the case entitled "Statement of Uncontroverted Facts" (ECF No. 25-1). Many of the facts cited in the summary are controverted by Plaintiff's testimony, the testimony of MassMutual's own witnesses, and other documentary evidence (as discussed in this Response). No effort was made by Defendant to confer with Plaintiff on whether this version of events is "uncontroverted." Plaintiff objects to the summary as an apparent effort to exceed the 20-

---

[1] References to Defendant's summary judgment evidence are indicated by "App. __." To avoid confusion, Plaintiff's summary judgment evidence is referenced by exhibit letter and page number (if applicable). Plaintiff has contemporaneously filed an Appendix in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment and Supporting Brief. Plaintiff's Appendix is incorporated herein by reference.

page limit imposed by Local Rule CV-7(d)(3) and moves the Court to exclude it from the summary judgment record.

## DEFENDANT'S RECISSION CLAIM / PLAINTIFF'S
## BREACH OF CONTRACT CLAIM:

The Texas Supreme Court has made it clear that in order to rescind a policy based on a misrepresentation, an insurance company must meet both the statutory requirements in Texas Insurance Code §705.004 and the five elements established at common law. *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 281 (Tex. 1994); *See also, Mayes v. Mass. Mut. Life Ins. Co.*, 608 S.W.2d 611 (Tex. 1980). In order to avoid liability under a policy based on a material misrepresentation, an insurer must prove the following elements: (1) the making of a representation by the insured; (2) the falsity of the representation; (3) reliance on the misrepresentation by the insurer; (4) the intent to deceive on the part of the insured in making the misrepresentation; and (5) the materiality of the misrepresentation. *Mayes,* 608 S.W.2d at 616. Plaintiff's breach of contract claim is essentially parallel to Defendant's counterclaim. If Defendant is not entitled to rescind the life insurance policy, it breached that contract by failing to pay Plaintiff the insurance benefits.

When the language of an insurance policy is susceptible to more than one construction, the insurance policy should be construed in favor of the insured to avoid exclusion of coverage. *Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 666 (Tex. 1987); *Chen v. Metropolitan Ins. & Annuity Co.,* 907 F.2d 566, 569 (5th Cir. 1990)(words and clauses of insurance contracts are strictly construed against the insurer). Furthermore, when a case involves an exception or limitation of the insurer's liability under the policy, an even more stringent construction is required. *Glover v. Nat'l Ins. Underwriters,* 545 S.W.2d 755, 761 (Tex. 1977). Indeed, "we must adopt the construction of an exclusionary clause urged

by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Id.*; *See also, Continental Casualty Co. v. Warren,* 254 S.W.2d 762, 763 (Tex. 1953).

In a summary judgment context, the court must "take as true all evidence favorable to the nonmovant" and "indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005).

## Misrepresentation on Policy Application

In *Protective Life Ins. Co. v. Russell,* 119 S.W.3d 274 (Tex.App.—Tyler 2003, *no writ*), the insurer asserted that the insured made a misrepresentation on his life insurance application because he failed to disclose that he had cancer. On the day the insured affirmed the answers on his application, he represented that he had never had, been told he had, or been treated for cancer, a tumor, or disorders of the lymph glands. The insured had previously displayed symptoms of possible cancer, knew of a liver mass, and his physician had told him that he had a "probable carcinoma." A confirmed diagnosis was communicated to the insured five days after the insurance took effect. The court determined that based upon the wording of the question, the insured "truthfully represented on the application that he had never had, been told he had, or been treated for cancer." *Id.* at 283.

The present case is similar in nature. MassMutual asked a specifically worded question of Faleana Gonzalez ("Faleana") in the application process. On Part 2 of the application, Question 3(d) inquired as follows:

> **3.** **In the past 10 years, has the Proposed Insured been diagnosed, treated, tested positive for, or been given medical advice by a member of the medical profession for a disease or disorder noted below:**

> **d.** **A disorder of the brain, spinal cord, or nervous system including seizures, tremors, paralysis, dizziness, fainting, headaches, stroke or TIA (transient ischemic attack)?**[2]

Of note, Question 3(d) did not inquire of Faleana whether she had ever experienced or suffered seizures, whether she had been diagnosed with seizures prior to the 10-year period, whether she had seizures or tremors for which she did not seek treatment, or define the terms "diagnosed," "treated," or "tested positive for." It did not inquire about medical conditions or medical care prior to December 30, 2003. Plaintiff's interpretation of the meaning of Question 3(d) should control as long as it is not unreasonable. *See,* Exhibit A.

MassMutual asserts that there is no genuine dispute of material facts regarding the issue of misrepresentation because Faleana made a misrepresentation when she answered "no" to Question 3(d).[3] If there exists a genuine dispute of material facts with respect to Defendant's rescission claim, then the summary judgment motion should be denied as to both Defendant's rescission claim and Plaintiff's breach of contract claim.

---

[2] MassMutual's claims examiner, John Surmik, testified that no misrepresentation was made with respect to the portion of Question 3(d) addressing having "been given medical advice by a member of the medical profession…" He testified as follows:

> Q: Are you saying that she was given medical advice by a member of the medical profession for a disorder of the brain, seizures or tremors in the ten years preceding her part 2 application?
>
> A: No.
>
> Q: So with respect to your decision to deny the claim and rescind the policy, the portion of question 3, part D, that references given medical advice by a member of the medical profession in the past ten years does not form a basis for your conclusion?
>
> A: Correct. (Exhibit C, pp. 164-165).

So Plaintiff's Response focuses on the question subparts of having been "diagnosed, treated, and/or tested positive for."

[3] MassMutual's July 17, 2015 rescission letter stated that an additional basis for rescission of the life insurance policy was a misrepresentation in the form of a "no" answer to Question 2(a), which stated, "Is the Proposed Insured currently: (a.) Under treatment by a member of the medical profession or taking any prescription medications (other than contraceptives)?" MassMutual has not included this question in its summary judgment motion. Its claims examiner, John Surmik, testified that he recognized Faleana was not under the care of a member of the medical profession when she signed her application (Exhibit C, pg. 166) and that there was no evidence that she was currently taken Tegretol in December 2013 (Exhibit C, pp. 171-173).

Plaintiff offers the following evidence showing a genuine dispute of material fact with respect to intentional misrepresentation:

1.  Plaintiff, Robert O. Gonzalez, Jr.'s affidavit testimony raises a genuine dispute of material fact with respect to whether Faleana's "no" answer to Question 3(d) was a misrepresentation. *See,* Exhibit A.

2.  Plaintiff's neurology expert, Eric Brahin, M.D.'s affidavit testimony raises a genuine dispute of material fact with respect to whether Faleana's "no" answer to Question 3(d) was a misrepresentation. *See,* Exhibit B.

3.  The testimony of John Surmik, MassMutual's claims examiner, raises a genuine dispute of material fact with respect to whether Faleana's "no" answer to Question 3(d) was a misrepresentation. *See,* Exhibit C (pp. 97-99, 101-102, 104-106, 109-110, 115-118, 120-124, 128-134, 153-157, 160-162, 164-167, 171-175, 182-183, 196, 220-221, 224, 226-227).[4]

4.  The testimony of Robyn Wallner, a MassMutual employee involved in Faleana's claim, raises a genuine dispute of material fact with respect to whether Faleana's "no" answer to Question 3(d) was a misrepresentation. *See,* Exhibit D (pp. 54, 57-58).

5.  The testimony of Thomas Ferris, a MassMutual employee involved in Faleana's claim, raises a genuine dispute of material fact with respect to whether Faleana's "no" answer to Question 3(d) was a misrepresentation. *See,* Exhibit E (pp. 57-64).

---

[4]  The most telling testimony from Mr. Surmik occurs when he is asked to consider Question 3(d) as it was interpreted by Robert and Faleana Gonzalez:

Q:  Now, I want to ask you a set of questions using definitions for diagnosed, treated, and tested positive for. And at the outset I will acknowledge that you're not going to agree with these definitions based on what you've said already. But if having been diagnosed meant seeing a physician and receiving a diagnosis, did you discover any evidence of that occurring in the ten-year period before Faleana Gonzalez signed her part 2 on December 30th, 2013?

A:  With the way you phrased the question, no.

Q:  If having been treated means seeing a physician in a medical setting and receiving treatment, did you uncover any evidence that Faleana Gonzalez was treated in the ten years prior to her signing her part 2 application on December 30th, 2013?

A:  No.

Q:  If tested positive for means undergoing a medical test like lab studies, an EEG, an MRI or a CT scan for investigation of seizures or tremors, did you see anything in the materials you obtained that would show that Faleana Gonzalez tested positive for seizures or tremors or a disorder of the brain in the ten years prior to her part 2 application?

A:  No. (Exhibit C, pp. 160-162).

6. The testimony of Dennis Krueger, P.A., a health care provider whose April 2014 patient encounter record partially formed the basis for MassMutual's decision to rescind Faleana's life insurance policy, raises a genuine dispute of material fact with respect to whether Faleana's "no" answer to Question 3(d) was a misrepresentation. *See,* Exhibit F (pp. 67-68, 72-75).

7. The testimony of Carolina Gonzalez, Faleana's mother-in-law, raises a genuine dispute of material fact with respect to whether Faleana's "no" answer to Question 3(d) was a misrepresentation. *See,* Exhibit G (pp. 8-9).

8. The testimony of Robert O. Gonzalez, Jr., Faleana's widow, raises a genuine dispute of material fact with respect to whether Faleana's "no" answer to Question 3(d) was a misrepresentation. *See,* Exhibit H (pp. 50-52, 301-315).

**Material to the Risk / Contributed to Contingency**

Texas Insurance Code §705.004(c) specifically states as follows:

"It is a question of fact whether a misrepresentation made in the application for the policy or in the policy itself was material to the risk or contributed to the contingency or event on which the policy became due and payable."

Accordingly, summary judgment on this element of Defendant's rescission claim is statutorily prohibited. *Carter v. Service Life & Casualty Ins. Co.,* 703 S.W.2d 349, 350 (Tex.App.—Corpus Christi 1985, *no writ*)("…the statute provides that the materiality of any false representation is a question of fact."); *See also, Occidental Life Ins. Co. of California v. King,* 365 S.W.2d 815, 817 (Tex.Civ.App.—San Antonio 1963, *writ ref'd n.r.e.*).

There is also a genuine dispute of material facts as to whether Faleana experiencing or suffering seizures and not disclosing those facts was a material misrepresentation. As stated above, the actual language of Question 3(d) limited itself to diagnosis, treatment, and testing positive for during a specific ten-year period. The question "have you experienced or suffered seizures?" was never asked, therefore raising a genuine dispute as to whether this information was or was not material to MassMutual. MassMutual's claims examiner, John Surmik, made a determination on the claim using the question "have you experienced or

suffered seizures?" or other similar inquiries not expressly contained within Question 3(d) (Exhibit C, pp. 98-99, 101-102, 104-106, 109-110, 115-118, 120-124, 132-133, 182-183), but as those questions were not expressly contained or stated within Part 2 of Faleana's application for the life insurance policy, there is a genuine dispute as to whether that information was material to MassMutual.

**Intent to Deceive**

The proposition that an insured's intent to deceive must be shown in order for an insurance company to successfully raise a defense of misrepresentation on the basis of a false statement made by the insured in the application for any type of insurance has been a part of Texas jurisprudence since 1888. The rule was first announced in *Lion Fire Ins. Co. v. Starr*, 12 S.W. 45, 46 (Tex. 1888)(fire policy); *See also, Gen. Am. Life Ins. Co. v. Martinez*, 149 S.W.2d 637, 639 (Tex. Civ. App.—El Paso 1941, *writ dism'd*)(disability policy); *Trinity Reserve Life Ins. Co. v. Hicks,* 297 S.W.2d 345, 350 (Tex. Civ. App.—Dallas 1956, *no writ*)(hospitalization policy); *Republic Bankers Life Ins. Co. v. Hoffman*, 483 S.W.2d 268, 269 (Tex. Civ. App.—Dallas 1972, *no writ*)(health policy); *Progressive Cnty. Mut. Ins. Co. v. Boman,* 780 S.W.2d 436, 439 (Tex.App.—Texarkana 1989, *no writ*)(motorcycle insurance); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.,* 780 S.W.2d 417, 425 (Tex.App.—Texarkana 1989)(aircraft insurance); *Am. Nat'l Ins. Co. v. Paul,* 927 S.W.2d 239, 242 (Tex.App.—Austin 1996, *writ denied*)(credit disability policy); *Tex. Farm Bureau Mut. Ins. Co. v. Rogers,* 351 S.W.3d 103, 107 (Tex.App.—San Antonio 2011, *pet. denied*)(homeowner's policy).

In *Medicus Ins. Co. v. Todd,* 400 S.W.3d 670 (Tex.App.—Dallas 2013, *no pet.*), the insurance company made the same argument being made by MassMutual in this case. It

contended that because Texas Insurance Code §705.004 does not expressly require, and never has required, the insurer to prove the insured's intent to deceive, the common law element of intent to deceive need not be proven to rescind the policy. The court of appeals noted that even so, the Supreme Court has imposed that requirement and addressed similar arguments since 1933, when the commission of appeals quoted the statute, then article 5043 of the 1925 Texas Revised Civil Statutes, and stated:

> "The great weight of authority sustains the rule that under the provisions of these statutes a misrepresentation, or breach of warranty, by the insured, to avoid the policy, must be willful, or made fraudulently with intent to deceive. . . . It is a settled rule in this state that false statements to avoid a policy must have been willful and made with a design to deceive or defraud."

*Am. Cent. Life Ins. Co. v. Alexander,* 56 S.W.2d 864, 866 (Tex. Comm'n App. 1933)(citation omitted).

That requirement has continuously been imposed by the Texas Supreme Court. *Union Bankers Ins. Co.,* 889 S.W.2d at 282; *Wash. v. Reliable Ins. Co.,* 581 S.W.2d 153, 159, 160 (Tex. 1979); *Allen v. Am. Nat'l Ins. Co.,* 380 S.W.2d 604, 607-608 (Tex. 1964); *Clark v. Nat'l Life & Accident Ins. Co.,* 200 S.W.2d 820, 822-23 (Tex. 1947); *Great S. Life Ins. Co. v. Doyle,* 151 S.W.2d 197, 201 (Tex. 1941); *Colorado Life Co. v. Newell,* 78 S.W.2d 1049, 1051 (Tex.Civ.App.—El Paso 1935, *writ ref'd*).

The *Medicus* court concluded as follows:

> "Section 705.004, in its different codifications, is now 110 years old. Although the statute has never expressly required the insurer to prove the insured intended to deceive the insurer with a misrepresentation in the policy application, the courts of Texas have consistently held that an insurer may not rescind a policy due to a misrepresentation in an insurance application unless the insurer proves the insured intended to deceive the insurer with the misrepresentation. We cannot vary from this long history of case law imposing this duty upon insurers. We conclude 'the intent to deceive on the part of the insured in making' a misrepresentation in an application for insurance is an element the insurer must prove to obtain a declaratory judgment that a policy is void due to the misrepresentation."

*Medicus Ins. Co.,* 400 S.W.3d at 679. Granting MassMutual's request in this case to "decline to revive the requirement of intent to deceive" would undo a vast body of Texas case law. MassMutual can point to no court, either state or federal, that has been willing to take this drastic step, despite MassMutual's argument being repeatedly asserted in an identical manner by insurance companies in rescission lawsuits.

Texas law is also clear that the issue of intent to deceive cannot be determined as a matter of law in a summary judgment context. *Cartusciello v. Allied Life Ins. Co. of Tex.,* 661 S.W.2d 285, 288 (Tex.App.—Houston [1st Dist] 1983, *no writ*)("intent to deceive or induce the issuance of an insurance policy can never be proved as a matter of law to establish the defense of misrepresentation."); *Garcia v. John Hancock Variable Life Ins. Co.,* 859 S.W.2d 427, 431 (Tex.App.—San Antonio 1993, *writ denied*)(court noted its inability to find a single, reported Texas case "in which a plaintiff suing for fraud has ever proven the element of intent to deceive as a matter of law in a summary judgment proceeding."); *Estate of Diggs v. Enterprise Life Ins. Co.,* 646 S.W.2d 573, 576 (Tex.App.—Houston [1st Dist] 1982, *writ ref'd n.r.e.*)(intent to deceive may not be proven by showing applicant falsely stated health condition); *Flowers v. United Ins. Co. of America,* 807 S.W.2d 783, 786 (Tex.App.—Houston [14th Dist] 1991, *no writ*) ("mere knowledge of one's health condition is insufficient to prove intent to deceive as a matter of law.").

In *Adams v. John Hancock Mut. Life Ins. Co.,* 797 F.Supp. 563 (W.D. Tex. 1992), the court determined in a summary judgment context that intent to deceive was a necessary element of a life insurance rescission claim and that any misrepresentation in the application for an insurance policy cannot alone establish an intent to deceive by the insured as a matter of law. In *Bates v. Jackson Nat'l Life Ins. Co.,* 927 F.Supp. 1015, 1019-21 (S.D. Tex. 1996),

the court determined that summary judgment was precluded despite evidence of the insured's knowingly false answers to specific questions about medical history and evidence of similar misrepresentations in applications submitted to two other insurance companies. *See also, Kirk v. Kemper Investors Life Ins. Co.,* 448 F.Supp. 828 (S.D. Tex. 2006).

Should the Court determine that the issue of intent to deceive can properly be determined by summary judgment, Plaintiff relies upon Exhibits A, C (pp. 196, 220-221, 224, 226-227, and H (pp. 314-315) as evidence raising a genuine dispute of material facts as to whether Faleana intended to deceive MassMutual in answering "no" to Question 3(d) of the application. *See, Carter,* 703 S.W.2d at 350 ("If [insured] was led to believe he was insurable, then he did not have the requisite intent to deceive appellee in order to induce it to issue coverage.").

Based upon the multiple genuine disputes of material facts pertaining to Plaintiff's breach of contract claim and MassMutual's rescission counterclaim, Defendant's Motion for Summary Judgment should be denied.

## <u>PLAINTIFF'S OTHER CLAIMS:</u>

Texas Insurance Code §451.060 prohibits unfair settlement practices by life insurance companies like MassMutual. More specifically, life insurance companies are not permitted to engage in unfair and deceptive acts or practices, including but not limited to: (a) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue, (b) failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of a claim of reasonably clear liability, (c) failing to promptly provide a reasonable explanation of the basis for the insurer's denial of a claim, (d) failing within a reasonable time to affirm or

deny coverage of a claim, (e) refusing to pay a claim without conducting a reasonable investigation with respect to the claim, and (f) misrepresenting an insurance policy.

Texas Insurance Code §542.003 also prohibits unfair settlement practices by life insurance companies. More specifically, life insurance companies are not permitted to engage in unfair claim settlement practices, including but not limited to: (a) knowingly misrepresenting to a claimant pertinent facts or policy provisions relating to coverage at issue, (b) failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurer's policies, and (c) not attempting in good faith to effect a prompt, fair, and equitable settlement of a claim submitted in which liability is reasonably clear.

Texas also recognizes a common law doctrine of good faith and fair dealing between an insurance company and a claimant. *Arnold v. Nat'l County Mutual Fire Ins. Co.,* 725 S.W.2d 165 (Tex. 1987). A cause of action for breach of the duty of good faith and fair dealing is stated when it is alleged that there is no reasonable basis for denial of a claim or a failure on the part of the insurer to determine whether there is any reasonable basis for the denial. *Id.* at 167. That duty arises from the special relationship between the insurer and the insured resulting from the insurer's disproportionately favorable bargaining posture in the claims handling process. *Id.*

Plaintiff has raised significant genuine disputes as to whether Faleana made a material misrepresentation in response to Question 3(d) and if so, whether Faleana made that misrepresentation with an intent to deceive MassMutual into issuing coverage. Therefore, MassMutual's argument that Plaintiff's bad faith and statutory claims are precluded as a

matter of law due to its asserted entitlement to summary judgment on its rescission claim is without merit.

Plaintiff further offers evidence supporting the assertion of his bad faith and statutory claims against MassMutual. Plaintiff's evidence raises a genuine dispute of material fact as to whether MassMutual's claims process was unfair and knowingly conducted in bad faith in violation of Texas law. MassMutual's claims examiner for this claim, John Surmik, made his claims determination using the question "have you suffered or experienced seizures or tremors?" Specifically, he testified as follows (Exhibit C):

Q:      If MassMutual told Mr. Gonzalez that his claim was being denied because Faleana was asked on the application whether she suffered from epilepsy, seizures or tremors and she did not tell the truth when she answered no, is MassMutual misrepresenting the application part 2's content?

A:      No.

Q:      Because you believe that the question includes the inquiry have you ever suffered from epilepsy, seizures or tremors? Right?

A:      Correct.

Q:      And you think that's what the application part 2 says?

A:      Correct. (pg. 190).

Q:      Hypothetically if she suffered seizures during this ten-year period and that's all that happened, would she –

A:      She should have answered yes.

Q:      And you interpreted this question in your claims determination process to include have you ever experienced a seizure in the last ten years, true?

A:      Yes.

Q:      And even if she didn't see a neurologist during the ten years, didn't receive any treatment during the ten years, didn't have any testing done during the ten years, the fact that she had seizures and seizures alone would require her to answer yes to this question, in your judgment?

A:      Yes.  (pp. 115-116).

Mr. Surmik, however, clearly and repeatedly conceded that his question ("have you suffered or experienced seizures or tremors?") was never asked by MassMutual.  He testified as follows (Exhibit C):

Q:      Question No. 3.D, did not expressly ask have you experienced seizures or tremors in the last ten years?  Is that true?

A:      Yes.

Q:      Does it say have you suffered from seizures or tremors in the past ten years? Is that the relevant inquiry?

A:      No.

Q:      Does the question ask have you had seizures or tremors in the last ten years for which you did not seek treatment?

A:      No.

Q:      Or refused treatment recommendations?

A:      No.  (pp. 98-99).

Q:      Question No. 3, part D, did not expressly reference self-treatment in the last ten years, did it?

A:      No, the question does not specifically say self-treated.

Q:      Does it say expressly have you failed to comply with treatment recommendations?

A.      No, it does not.

Q:      If one refuses treatment or fails to comply with treatment recommendations one is not being treated, are they?

A:      No.  (pp. 132-133).

Q:      My question again was question No. 3, part D, does not expressly state have you carried a diagnosis in the past ten years?

A:      No.

Q:      That question does not expressly state were you diagnosed before the ten-year period and remained with the diagnosis during the ten-year period?

A:      No.  (123-124).

Q:      But we can agree still, can't we, that the question itself does not expressly say in the past ten years have you experienced or suffered a seizure?

A:      It does not expressly say that.  (pp. 117-118).

Q:      So if MassMutual wanted to specifically seek the information we just discussed, MassMutual could have changed the questions?

A:      Yes.

Q:      And they're the only ones who could have changed the questions?

A:      Yes.  (pp. 101-102).

Mr. Surmik adjusted this claim, denied it, and rescinded the policy using a question that MassMutual never asked Faleana during the part 2 application process.  Additionally, Mr. Surmik decided that he was not limited by the 10-year time frame expressly set forth in Question 3(d).  This decision substantively changed the question even further.  He testified as follows (Exhibit C):

Q:      So when you adjusted this claim and made your determination, you did not limit yourself specifically to the ten years prior to the application, you went beyond the ten years; isn't that true?

A:      Correct.

Q:      Because that's the way you interpreted the question.  It says in the past ten years, but for my analysis have you ever been diagnosed, treated, tested positive for or been given medical advice is the standard that I'm going to use in adjusting the claim, fair?

A:      For this claim, yes.  (pg. 106).

Q:      You used a period in excess of the past ten years when you did your analysis and adjusted this claim?  Your answer?

A:    My answer would be the same.

Q:    Is it yes, I did, or no, I didn't?

A:    Yes.

Q:    But if we look at question No. 3, part D, it specifically and expressly limited the inquiry to the past ten years, true?

A:    Yes.

Q:    And there's no ambiguity in the time period being asked about; it says in the past ten years, true?

A:    Yes.  (pp. 109-110).

Q:    Now, if there was information responsive to question No. 3, part D, that was from a time prior to the past ten years, would Faleana Gonzalez have been required to disclose it and answer yes to this question?

A:    Yes.

Q:    So if there was information from prior to December 30th, 2003, Faleana would need to answer yes?

A:    Yes.

Q:    And if she answered no because the information was prior to December 30th, 2003, that no answer, in your judgment, was a material misrepresentation?

A:    Correct.  (pp. 121-122).[5]

Mr. Surmik further acknowledged that changing Question 3(d) into a question that was never asked was unfair and constituted bad faith.  He testified as follows (Exhibit C):

Q:    If the claims analysis focused on questions that were not expressly within part 2 of the application, is that fair to the claimant?

A:    No, that's not fair to the claimant…

---

[5] Incredibly, this testimony was given after MassMutual's attorney asked for a 10-minute break to confer with Mr. Surmik and the witness returned to change his prior testimony, saying that he hadn't meant that he had gone outside of the ten-year period in denying the claim and rescinding the policy (pp. 111-113).

Q:    Meaning if the decision to rescind this policy was based on a question that was never asked, that would not be in good faith, would it?

A:    Correct. (pp. 189-190).

The testimony of MassMutual's claims examiner raises a genuine dispute of material fact as to whether MassMutual violated Chapters 541 and 542 of the Texas Insurance Code and the common law doctrine of good faith and fair dealing.  There is evidence of MassMutual misrepresenting to Plaintiff the basis for rejecting the claim and rescinding the policy, in that the claim was adjusted using a question that was never asked.  Mr. Surmik testified under oath that this was a failure to in good faith settle the claim.  There is evidence that it was not reasonable to deny the claim based upon a misrepresentation to a question never asked.

Moreover a genuine dispute of material fact exists as to whether Mr. Surmik and MassMutual's conduct in unfairly denying Plaintiff's claim and acting in bad faith was committed knowingly.  Mr. Surmik freely acknowledges that he knew that denying a claim and rescinding a policy based upon misrepresentations to a question that was never asked was wrongful conduct.  He even testified to that fact after he had offered testimony that he had unreasonably interpreted Question 3(d) to mean "have you suffered or experienced seizures or tremors?"[6]  *See, Universe Life Ins. Co. v. Giles,* 950 S.W.2d 48, 56 (Tex. 1997)(with respect to bad faith claim, "when there is evidence on either side, the issue is a fact question.").

Additionally, Texas Insurance Code §542.056 requires that an insurer notify a claimant in writing of the acceptance or rejection of a claim not later than the 15th business

---

[6]    Note that when Mr. Surmik was presented with the Gonzalez' interpretation of Question 3(d), he conceded that there was no misrepresentation or basis for rescission of the policy.  (Exhibit C, pp. 160-162). MassMutual would have to prove as a matter of law that the Gonzalez' interpretation was unreasonable in order to be entitled to summary judgment.  It has not done so.  *Glover,* 545 S.W.2d at 761.

day after the date the insurer receives all items, statements, and forms required by the insurer to secure final proof of loss. Failure to comply is a violation of Chapter 542 of the Texas Insurance Code and sufficient basis for recovery of the damages permitted under §542.060. In this case, MassMutual notified Plaintiff in writing of its rejection of the claim and rescission of the policy on July 17, 2015 (App. 208-214). MassMutual's notice was received by Plaintiff on July 20, 2015 (Exhibit I). The claims examiner who made the determination, John Surmik, testified on this subject as follows (Exhibit C):

Q:   If we look at Exhibit 73, the last piece of information that you received in order to secure final proof of loss was the North Central Baptist Hospital records, true?

A:   That is correct.

Q:   And those were received on or about June 19, 2015?

A:   Correct.

Q:   There wasn't anything else that MassMutual used to analyze and make a decision on the claim in terms of medical records?

A:   As far as receiving medical records, no.  (pp. 58-59).

Q:   And the review in this case did not determine that there was a need for any additional information?

A:   That is correct.

Q:   So in this particular case, as far as obtaining things from folks who were outside of MassMutual, you had received all the items, statements and forms required to provide final proof of loss by June 19th, 2015?

A:   We had received enough documentation to have our medical review done. Again, saying that the medical review could have determined that we needed to request some additional information.

Q:   And, again, it didn't though in this case, did it?

A:   In this case, no.  (pp. 60-61).

Q: This is Exhibit 76. This is the email to the medical consultant. Her name in this case was Janet Patterson, RN; is that correct?

A: That is correct.

Q: You sent her the materials on July 9th, 2015?

A: Yes.

Q: The only information submitted to Nurse Patterson was information obtained on or before June 19th, 2015; isn't that true?

A: Yes.

Q: So you had had the necessary information to submit to her for 20 days before you actually did submit it?

A: Yes.

Q: And you told her that it was of high importance and needed to be handled as soon as possible.

A: Yes.

Q: And she complied and got back to you the next day, July 10th?

A: Yes. (pp. 67-68).

There exists at least a genuine dispute of material fact as to whether MassMutual violated §542.056 and therefore violated Chapter 542 of the Texas Insurance Code. There is evidence that MassMutual had received all items, statements, and forms required to secure final proof of loss by June 19, 2015. The statute required that MassMutual notify Plaintiff of its rejection of the claim not later than the 15th business day thereafter, which would have been July 10, 2015. MassMutual's notice of rejecting the claim was mailed on July 17th and received by Plaintiff on July 20th. *See, Protective Life Ins. Co.,* 119 S.W.3d at 286 (insurer liable under predecessor statute when claim was denied later than 15th business day after receipt of requested documentation).

PREMISES CONSIDERED, Plaintiff requests that this Court deny Defendant's Motion for Summary Judgment in its entirety, and award Plaintiff such further general relief to which he may be entitled.

Respectfully submitted,

By: _____
    S. Tyler Scheuerman
    State Bar No. 00791610

**SCHEUERMAN LAW FIRM, PLLC**
322 West Woodlawn Ave.
San Antonio, Texas 78212
(210) 735-2233
(210) 735-2235 – facsimile
tyler@sch-lawfirm.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure, a true and correct copy of the forgoing document was delivered to the following parties on May 12, 2016:

    Andrew Whitaker
    Figari + Davenport, LLP
    901 Main Street, Suite 3400
    Dallas, TX 75202-3776

_____
Tyler Scheuerman